## Case No. 17,647.

### WILDER v. ADAMS et al.

[2 Woodb. & M. 329.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1846.

#### ACTION OF COVENANT—DEFENCES.

1. Where an action is brought on a covenant for the payment of certain sums agreed to be paid at a certain rate per weight of salamander safes, which the defendants had been licensed to make and sell by the plaintiff: it cannot be proved as a defence, that the patent for them was invalid.

2. Where the patent right is sold and no benefits are received from it, and an action is brought for the consideration on a parol promise, it may be a good defence that the patent was invalid; but not so when the action is on a sealed instrument, or when another covenant implied from the plaintiff to the defendants was probably the real consideration, and on which a remedy exists, if the defendants have suffered any damages on account of the patent being invalid, and when the defendants, in the sales they are called on to account for on their covenant, have received the proceeds, and sustained no loss of any by reason of the patent being invalid.

[Cited in Birdsall v. Perego, Case No. 1,435; White v. Lee, 14 Fed. 791. Distinguished in Mudgett v. Thomas, 55 Fed. 647.]

[Cited in Davis v. Gray, 17 Ohio St. 352; Jones v. Burnham, 67 Me. 99.]

3. If fraud, however, existed in the matter, or any contravention of public policy, it might be set up as a defence to this action.

This was an action of covenant, on an agreement alleged to have been made between the plaintiff [Benjamin G. Wilder] and the defendants [William Adams and others] on the 23d day of September, 1843, under their respective seals, and in which the defendants are stated to have made the following covenants: (1) In consequence of the grant to them by Wilder of a right or license to make and vend in New England Fitzgerald's salamander safe, they agreed to keep a true account of the number made and sold with their weight. (2) To report the same monthly to the plaintiff or his agent, and pay one cent per lb. on the weight of those sold. (3) To manufacture them in the way and of the good quality pointed out. (4) To pay one thousand dollars penalty, if neglecting to fulfil the covenants.

The declaration then alleged a breach of all these covenants, and for which this suit was instituted April 23d, 1846.

At the trial here May term, 1846, held by adjournment in September, the counsel agreed, that the first and principal defence was the supposed invalidity of the patent before de-

1 [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

scribed, and that the covenant declared on should be put into the case; and if the court should entertain an opinion in point of law, that such a defence could not be made to this action, the damages should be agreed by the parties or assessed by the court or an auditor; but, on the contrary, if such a defence was here competent, the case should stand for trial at the next term. The deed of covenant being put into the case, appeared to be between these parties and made on the day named in the declaration, and containing such stipulations as is there alleged. Among other details, not necessary to be repeated, it was covenanted, that the parties should equally bear the expense of any suit, instituted by either for a violation of said patent, and not allow, without notice to the other, any judgment to be rendered against its validity. And if judgment shall be rendered against its validity in any part of New England, it was stipulated—"said Adams & Hammond shall, from and after the rendering of said judgment, be exonerated and discharged from this agreement as to any subsequent sales of said safes, but that they are not thereby to be exonerated or discharged from any payments, that may have become due under this agreement previously to the rendering of such judgment."

W. Philips, for plaintiff.
B. R. Curtis, for defendants.

WOODBURY, Circuit Justice. This defence goes in substance to the consideration of the covenant, on which the plaintiff declares. And the argument seems to be, that the invalidity of the patent, if shown, would constitute a failure of the consideration, on which the covenant to account and pay rested, and hence would be a good bar to any recovery. But I doubt the soundness of this reasoning in the present form of action, and as applied to a covenant like that, upon which it is founded. Were this suit assumpsit on a parol promise to pay a certain sum for the assignment of a valid patent for a certain machine, and the plaintiff counted, as he must, on an assignment of such a patent as the consideration of the promise, probably he might be obliged to prove the patent was a valid one, and its validity might be impeached in defence to the claim of the plaintiff. Holden v. Curtis, 2 N. H. 64, 65. But here the plaintiff sues in covenant on a sealed instrument, and a good consideration is implied from the solemn form of the promise in writing and under seal. Independent of this, the covenant had for its actual consideration another covenant by the plaintiff, implied from his assignment or grant of a license to use Fitzgerald's safes in New England during the rest of its term; and if that patent was invalid, the defendants probably have a remedy on the covenant, implied in that assignment or grant, for any damages they may thus have sustained. But they cannot, as a general principle and in ordinary cases, resort to such a defence as a

want of consideration, or the failure of consideration, when an action of covenant is brought on a sealed instrument, executed in consequence of and founded on another covenant made by the other party to the defendants. The defences, which are sometimes permitted to such suits on such instruments, on the ground of their being opposed to express statutes, or void for fraud or opposition to public policy (2 Johns. 177), rest on different principles, and are not applicable here. In Bliss v. Negus, 8 Mass. 46, the patent was shown to have been fraudulently obtained, and this was properly allowed to be a defence to a note for it. In the case of Hayne v. Maltby, 3 Durn. & E. [3 Term R.] 438, two of the judges expressly go on the ground that the consideration was fraudulent. The case was also one where the covenant was against public policy, being in restraint of using new improvements, and where the defendants had no other covenant to resort to for redress.

Again, if these conclusions are unsound, and an inquiry could properly be made into the consideration of the present covenant, it is by no means certain, that there has been a failure of it, so as to bar a recovery here for the stipulated rate agreed to be paid on the safes actually sold. That rate is not a compensation for any expected or prospective sales of the safes, nor for the full value of the patent right for them in New England. But it was rather for a license to make and sell them within that territory, and the contract was virtually the payment of a certain rate for all which they might actually sell and receive compensation for. If it should turn out, that the patent itself was invalid, but had not been proved to be so in defence to the payment for any of the machines sold, and defeated the action, or had not been made the ground for recovering damages of these defendants by any of their vendees, it is difficult to see how the consideration, which the defendants expected to receive as the foundation of this part of their covenant, has failed; or how they have, in respect to this accounting, suffered any thing or met with any obstacle, which renders it inequitable. Receiving all the profits and benefits from these sales, already made, which they expected or stipulated for, it constitutes a much stronger and more valuable consideration to pay pro rata for them, than many that have been sustained in several adjudged cases. Vickery v. Welch, 19 Pick. 523; 1 Sim. & S. 74; 8 Ves. 215. They have had the license to make and sell which they agreed for; they have received proceeds from it, and they are only asked to pay over the proportion of those proceeds, which they agreed to; they have lost nothing in all this, if the patent was invalid; and why, then, should it be said that the consideration for this contract has failed? Again, there is, in selling by license under another, a recognition or admission of title in that other, not to be contravened lightly between the parties. If a lessee be not actually evicted by

some better or higher title in a third person, he is bound to pay rent as long as he continues to enjoy quietly the premises leased to him, though by one whose title may be invalid. 3 Durn. & E. [3 Term R.] 43S. Nor is any case found, where a patent has been possessed and enjoyed, and a recovery back of the consideration paid for it, has succeeded. Phil. Pat. p. 347, c. 16. On the contrary, it has been held, that if benefits have been obtained by the patent, the recovery back will not be sustained. Taylor v. Hare, 1 Bos. & P. (N. R.) 260; 2 N. H. 65. It is on a principle somewhat analogous, that a borrower of an article, having admitted the title of the lender, must restore it to him, under his contract to do it, and under his recognition of the title of the lender by hiring it of him. Poth. Usage, 35; Story, Bailm. § 266; 8 Durn. & E. [8 Term R.] 190; 2 Taunt. 26S. He is not excused. except by a suit and recovery against him by a third person claiming title. Story, Bailm. §§ 120, 230; Edson v. Weston, 7 Cow. 27S; Wilson v. Anderton, 1 Barn. & Adol. 450; Shelbury v. Scotsford, Yelv. 23. By the Roman law, a thief could regain the articles of a borrower from him (Dom. Civil Law, pt. 13, tit. 6); that is, I suppose. if the true owner did not interpose. So a lessee cannot dispute the title of his landlord. White v. Foljambe, 11 Ves. 337; 2 Ves. 304, 305, note, 394; Hunter v. Marlboro [Case No. 6,908.]

If the defendants do not feel secure in making and selling more machines, or feel justified in doing it, under a belief that the patent is invalid, and thus are stopped and injured in their business, that is a different affair, and their remedy for damages is not by this defence; but is on the covenant or assignment by the plaintiff, selling to them the patent or license for New England, when it was in law not valid, and thus disabling them from proceeding under it. That, too, is the only appropriate remedy, as it will enable them to procure or recover all the actual damages; while, if the defence now proposed is allowed as a substitute, it may enable the defendants to retain, according to the amount now in their hands claimed by the plaintiff, more, or not so much, as the actual damage. Shutting out this defence, all the plaintiff would now be allowed to recover of them will be only what they have received and covenanted to pay him, on account of his agreeing that they should use his patent within New England, and which they have used to the time claimed for: while they will be allowed to recover of the plaintiff, on his covenant and sale to them, all which they have suffered from any invalidity in that patent. This result seems equitable no less than legal towards both. Cowley v. Dunlop, 7 Durn. & E. [7 Term R.] 56S: Holden v. Curtis, 2 N. H. 65. Finally, it seems to accord with their own views, not only as implied from those provisions in their covenants already referred to, but as expressed in the closing stipulation. That exonerates the de-

fendants, totidem verbis, from payments on any sales made after the patent shall be adjudged invalid by any court; but provides, further, "that they are not thereby to be exonerated or discharged from any payments that may have become due under this agreement, previously to the rendering of such judgment."

It is difficult to believe, that the parties would stipulate not to discharge the defendants from liability for previous sales, even when the patent was adjudged void by the grave sentence of a court; and would mean to have the defendants discharged, if, in any less conclusive mode, it could be shown that the patent was invalid. There are other aspects of the case which strengthen this conclusion. In one view of the covenants, as formed in detail between these parties, they became quasi partners as to the sale of these safes in New England, the defendants retaining a portion, and paying over a portion to the plaintiff. As such partners, a defence by one against accounting to the other for actual sales and receipts, because the patent may not have been valid, which was the subject of them, would be novel, and difficult to sustain. In another view, the defendants were agents to make and vend for the plaintiff in New England, coupled with an interest in the agents to the whole amount, except a certain rate reserved on the weight of all that was sold. But a defence like this, by an agent, against paying over a portion of the actual receipts and proceeds of his agency, could hardly be tenable.

Considerable discussion, also, has been had in argument for the defendants to show there is no estoppel here to make such a defence. T. Raym. 27; 3 Durn. & E. [3 Term R.] 43S; 1 Lev. 45; 3 Lev. 193; 3 Leon. 159, cited. But the illustrations I have put are not grounded on the idea, that there is here any technical estoppel. They rest rather on the idea, that such a defence is not consistent with the position and relation of the defendants to the plaintiff; and, in this case itself, this defence not only contravenes the attitude in which the parties stand towards each other by the terms of the covenant, but, as before shown, is not calculated to enforce justice towards either party. If, however, the defendants can show that the plaintiffs have acted fraudulently in taking out this patent, I should think the defence admissible under the cases before cited from Durnford & East, and the Massachusetts Reports. But the defence now proposed, I do not think competent under the other facts, circumstances and covenants which exist.

WILDER (BALDWIN v.). See Case No. 806.

WILDER, The (COHEN v.). See Case No. 2,965.

WILDER (COX v.). See Cases Nos. 3,308 and 3,309.